*68 ANNUNZIATA, Judge,
concurring.
The disposition of this appeal is governed by the recent decision of a panel of this Court in Mosby v. Commonwealth, 24 Va.App. 284, 482 S.E.2d 72 (1997). I write to address further the issue whether the abolition of parole in Virginia for all felony offenses, under Code § 53.1-165.1, is “relevant ... evidence related to punishment” in a bifurcated sentencing proceeding under Code § 19.2-295.1.
Under the former unitary trial procedure, before the abolition of parole for all felony offenses, the principle was well established that “the trial court should not inform the jury that its sentence, once imposed and confirmed, may be set aside or reduced by some other arm of the State.” Hinton v. Commonwealth, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978). Both appellant and the dissent argue that the General Assembly ipso facto rendered this principle a nullity by making “fundamental changes” in felony sentencing procedures, viz., by bifurcating the guilt and sentencing aspects of trial, and by abolishing parole for all felony offenses. I find their position unsupported either in controlling case precedent or by the acts of the General Assembly.
The bifurcated felony trial was not unknown in the Commonwealth prior to the enactment of Code § 19.2-295.1. Such was, and continues to be, the trial procedure in the prosecution of capital murder offenses. Gilliam v. Commonwealth, 21 Va.App. 519, 523, 465 S.E.2d 592, 594 (1996). In the context of bifurcated capital murder trials conducted prior to the enactment of Code § 19.2-295.1, the Supreme Court consistently applied the well established principle that information concerning parole eligibility is not relevant evidence to be considered by the jury. See Eaton v. Commonwealth, 240 Va. 236, 248, 397 S.E.2d 385, 392 (1990), cert. denied, 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991) (“Information concerning parole eligibility is not relevant evidence to be considered by the jury.”); King v. Commonwealth, 243 Va. 353, 368, 416 S.E.2d 669, 677, cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992).
*69 When enacting Code § 19.2-295.1, the General Assembly did not identify the specific evidence related to punishment that it considered “relevant” for the jury’s consideration during the sentencing phase of a bifurcated felony trial. Pursuant to established principles of statutory construction, however, this Court has repeatedly interpreted the legislature’s decision to expand the bifurcated trial procedure to all felony jury trials in light of the principles developed in the context of capital murder trials. See Gilliam, 21 Va.App. at 522-23, 465 S.E.2d at 594; Bunn v. Commonwealth, 21 Va.App. 593, 598, 466 S.E.2d 744, 746 (1996). Applying the same principles here, the conclusion follows that evidence regarding parole is not relevant evidence related to punishment under Code § 19.2-295.1.
Both appellant and the dissent argue that such analysis is no longer controlling in light of the United States Supreme Court’s decision in Simmons v. South Carolina, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which “substantially abrogated” the principle that information concerning parole is not relevant evidence related to punishment in capital cases. Simmons, however, has no bearing on the question whether the General Assembly’s extension of the bifurcated sentencing proceeding from capital trials to all felony trials requires that the jury be provided information concerning parole. The rule of Simmons is “that where the State puts the defendant’s future dangerousness in issue, and the only available alternative sentence to death is life imprisonment without parole, due process entitles the defendant to inform the capital sentencing jury ... that he is parole ineligible.” Mueller v. Murray, 252 Va. 356, 362, 478 S.E.2d 542, 546-47 (1996). The due process rationale of Simmons applies only when each of the following predicates is met, viz., (1) future dangerousness is at issue; (2) the jury is faced with a choice between death and life imprisonment; and (3) the defendant is, in fact, parole ineligible. See Roach v. Commonwealth, 251 Va. 324, 346, 468 S.E.2d 98, 111, cert. denied, — U.S.-, 117 S.Ct. 365, 136 L.Ed.2d 256 (1996); Mosby, 24 Va.App. at 290, 482 S.E.2d at 74. Where the aforementioned predicates are met, parole ineligi *70 bility is relevant for the jury’s consideration: the issue is whether a defendant who will never be released from incarceration actually poses a future danger to society.[6] It simply does not follow, however, that parole ineligibility is relevant for the jury’s consideration in every case simply because a bifurcated sentencing proceeding is undertaken.[7]
Moreover, the enactment of Code § 53.1-165.1 is not the first act of the General Assembly to abolish parole in Virginia. In July 1982, the General Assembly abolished parole for three-time felony offenders. See Code § 53.1-151(B)(1). In that context, the arguments now raised for instructing the jury on the abolition of parole were rejected. See Peterson v. Commonwealth, 225 Va. 289, 296-97, 302 S.E.2d 520, 525, cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); Williams v. Commonwealth, 234 Va. 168, 178-80, 360 S.E.2d 361, 368 (1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).[8] Peterson compels the conclusion that *71 there is no basis for finding that, by abolishing parole for all convicted felons, the General Assembly intended to override the principle enunciated time and again by the Virginia Supreme Court that information concerning parole eligibility or ineligibility is not relevant for the jury’s consideration.
The United States Supreme Court’s decision in Simmons does not affect such an analysis. Simmons does not support the proposition that the fact of parole ineligibility alone requires that the jury be so informed. See Roach, 251 Va. at 346, 468 S.E.2d at 111; Mosby, 24 Va.App. at 290, 482 S.E.2d at 74. Indeed, while acknowledging the Simmons holding in cases in which the defendant was parole eligible (or had simply failed to establish parole ineligibility) and thus was not entitled to the instruction, the Virginia Supreme Court has persisted in noting its “consistente] rejection of] efforts to permit jurors to consider a defendant’s parole eligibility or ineligibility.” See Clagett v. Commonwealth, 252 Va. 79, 94, 472 S.E.2d 263, 272 (1996), cert. denied, — U.S.-, 117 S.Ct. 972, 136 L.Ed.2d 856 (1997); Joseph v. Commonwealth, 249 Va. 78, 83-84, 452 S.E.2d 862, 866, cert. denied, — U.S. -, 116 S.Ct. 204, 133 L.Ed.2d 137 (1995) (citing the preSimmons cases of King v. Commonwealth, 243 Va. 353, 368, 416 S.E.2d 669, 677, cert. denied, 506 U.S. 957, 113 S.Ct. 417, 121 L.Ed.2d 340 (1992), and Yeatts v. Commonwealth, 242 Va. 121, 127, 410 S.E.2d 254, 258 (1991), cert. denied, 503 U.S. 946, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992), for the same principle).
In sum, I find no support in the controlling jurisprudence of this Commonwealth for the proposition that either the fact of bifurcation or the fact of parole abolition renders a defendant’s status as parole ineligible relevant evidence for the jury’s consideration at sentencing. It does not follow that the *72 General Assembly ipso facto rendered this jurisprudence a nullity by expanding the bifurcated procedure to all felony trials and by abolishing parole for all convicted felons.
To the contrary, nothing in the express language of either of the applicable Code sections compels the conclusion that the abolition of parole is relevant evidence for the jury’s consideration. Furthermore, as discussed above, when enacting Code §§ 19.2-295.1 and 53.1-165.1 the General Assembly was acting in an area in which the Virginia Supreme Court had already spoken. As such, the General Assembly “ ‘is presumed to' [have] know[n] the law as the Court has stated it and to [have] acquiescefd] therein.’” Gilliam, 21 Va.App. at 524, 465 S.E.2d at 595 (quoting McFadden v. Commonwealth, 3 Va. App. 226, 230, 348 S.E.2d 847, 849 (1986)).
Finally, and perhaps most telling, in 1996 the General Assembly failed to approve a bill which would have amended Code § 19.2-295.1 to read as follows:
Upon request of the Commonwealth or the defendant, the court shall instruct the jury that parole has been abolished for felony offenses occurring on or after January 1, 1995, and on the law regarding the defendant’s eligibility for release.
Senate Bill No. 477 (Offered January 22,1996).[9]

. While future dangerousness was arguably at issue in the present case, Simmons does not apply here because the jury was not faced with a choice between death and life imprisonment. See Mosby, 24 Va.App. at 290, 482 S.E.2d at 74.

. Indeed, the rationale of Simmons would not obtain even in a capital sentencing proceeding where a sentence of death was predicated on "vileness" rather than "future dangerousness," notwithstanding the bifurcated nature of the proceeding and the fact that the defendant was parole ineligible. See Cardwell v. Commonwealth, 248 Va. 501, 515, 450 S.E.2d 146, 155 (1994), cert. denied,-U.S.-, 115 S.Ct. 1826, 131 L.Ed.2d 747 (1995) (suggesting Simmons not applicable where punishment fixed upon "vileness” predicate). The fact of parole ineligibility bears no relation to the vileness of the crime.

. In Peterson, the Supreme Court of Virginia considered two questions. First, the propriety of an instruction similar to the one at issue in this case given in response to a jury question regarding parole eligibility and, second, whether the legislature’s amendment to Code § 53.1-151(B)(1), which made a person convicted of three separate offenses of armed robbery ineligible for parole, required an instruction to that effect. Turning aside the failure of Peterson to object when the trial court declined to instruct the jury about his parole ineligibility and gave instead the instruction approved in Clanton v. Commonwealth, 223 Va. 41, 54-55, 286 S.E.2d 172, 179-80 (1980), and Hinton v. Commonwealth, 219 Va. 492, 247 S.E.2d 704 (1978), that the jury "should not concern [itself] with what may thereafter happen,” the Supreme Court *71 addressed the second question regarding the effect of the legislative amendment on the Court’s prior holding. It stated: "We need not consider the effect of this statutory amendment [which followed Clan-ton and Hinton ] because we rely upon and reaffirm the principle enunciated in [those two prior cases] that it is improper to inform the jury as to the possibility of parole.” Peterson, 225 Va. at 297, 302 S.E.2d at 525.

. The merit of the recommendations made by the Sentencing Commission to the General Assembly to which the dissent alludes Eire not at issue. The issue is how, if at all, the General Assembly has responded to those recommendations in light of the established jurisprudence in the Commonwealth. Furthermore, while I agree that important values are at stake in this case, not the least of which is the value the judicial system places on informed decision-making by both judge and jury alike, I believe that, in light of the established law of the Commonwealth, the issue is one properly left to the General Assembly. In its 1996 Session, the General Assembly plainly rejected a bill which would have required that juries be instructed with respect to the abolition of psirole. Although the issue was again raised by the Virginia Criminal *73 Sentencing Commission's 1996 Annual Report, the General Assembly took no action on the issue in its 1997 Session.